[No. 36277-5-II. Division Two. January 23, 2008.]

BARBARA THOMPSON, *Appellant*, v. TERRY WILSON, *as Lewis County Coroner, Respondent.*

---

804

*Royce A. Ferguson, Jr.*, for appellant.

*John E. Justice* (of *Law Lyman Daniel Kamerrer & Bogdanovich, PS*), for respondent.

¶1 VAN DEREN, A.C.J. — Barbara Thompson appeals the trial court's order of summary judgment dismissing her petition based on the statute of limitations for (1) judicial review under RCW 68.50.015, (2) a writ of mandamus, (3) a writ of certiorari, and (4) declaratory judgment relief. She sought (1) judicial review of the accuracy of the coroner's determination that her daughter committed suicide, (2) a

writ of mandamus requiring the coroner to "make accurate determinations and certifications," (3) a writ of certiorari compelling the coroner to review his determination, and (4) a declaratory judgment that her daughter's death was not suicide. Clerk's Papers (CP) at 64. We hold that, to the extent Thompson sought to compel the coroner's compliance with RCW 68.50.105, the trial court erred in granting summary judgment dismissal based on the statute of limitations of her petition for judicial review and a writ of mandamus. Thus, we reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

## FACTS

¶2 On December 16, 1998, Ronda Reynolds died from a single gunshot wound to the head. Ron Reynolds, her husband, reported her death, and the Lewis County Sheriff's Office investigated. On the day Ronda died, the Lewis County coroner, Terry L. Wilson, issued a coroner's determination and certificate of death, listing the cause of death as a "contact handgun wound of the head" and the manner of death as "undetermined." CP at 47. On August 9, 1999, the death certificate was amended to list the cause of death as a self-inflicted gunshot wound and the manner of death as suicide. Thompson, Ronda's mother, believed that Ronda was murdered and pressured the Lewis County Sheriff's Office to reinvestigate.

¶3 According to Wilson, on October, 23, 2001, the law enforcement investigation was reopened and the death certificate was again amended to reflect an undetermined manner of death. Finally, on May 30, 2002, that investigation confirmed that Ronda had died of a self-inflicted gunshot wound and the death certificate was amended accordingly.

¶4 On March 15, 2006, Thompson requested a meeting with Wilson "to discuss the Autopsy Report dated 12-31-

1998 on my [d]aughter."[1] CP at 22. Thompson met with Wilson and apparently provided him a copy of an independent "Case Review" that disputed the manner of death.[2] CP at 23. But Wilson did not change the manner of death on Ronda's death certificate as a result of that meeting and he did not meet with Thompson again, despite his agreement to do so.

¶5 On August 18, 2006, Thompson filed a petition for judicial review under RCW 68.50.015, which provides that "[a] county coroner . . . shall be immune from civil liability for determining the cause and manner of death. The accuracy of the determinations is subject to judicial review." CP at 62. She also sought a writ of certiorari and a writ of mandamus under chapter 7.16 RCW, asserting that the coroner's actions were "arbitrary and capricious." CP at 63.

¶6 Specifically, Thompson's petition sought (1) "judicial review of [Wilson]'s actions and determinations"; (2) "the issuance of a writ of certiorari directed to [Wilson] to review his actions and determinations"; (3) "the issuance of a writ of mandate enjoining [Wilson] to make accurate determinations and certifications"; (4) "a jury to determine questions of fact"; (5) a "declaratory judgment that Ronda Reynolds['] death was not a suicide"; and (6) "an award of costs and reasonable attorney fees." CP at 64. Thompson's petition named Wilson as "Respondent/Defendant." CP at 61. Her petition also included the August 11, 2006 report from a firearms expert who concluded that "considerable doubt exists as to the determination that Ronda Reynolds committed suicide, and that probable cause exists that she was murdered." CP at 110. In answering Thompson's complaint, Wilson asserted, among other things, that Thompson had

---

[1] RCW 68.50.105 provides, in pertinent part, that the "coroner . . . shall, upon request, meet with the family of the decedent to discuss the findings of the autopsy or post mortem."

[2] Thompson's May 1, 2006 letter to Wilson indicates the meeting took place on April 24, while her petition, her response to Wilson's motion for summary judgment, and her appellate brief indicate that the meeting occurred on March 24, 2006. The actual date of the meeting is not at issue.

failed to state a claim on which relief could be granted and that the statute of limitations barred her suit.

¶7 Wilson moved for summary judgment. He argued that (1) no material issues of fact were disputed; (2) principles of exhaustion did not apply because there were no required administrative procedures; and (3) in any case, the statute of limitations precluded Thompson's suit. Thompson argued that there were genuine issues of material fact about when her cause of action accrued and the manner and cause of Ronda's death; thus, summary judgment was not appropriate. Thompson also argued that, because she had not exhausted all administrative remedies until her March 24, 2006 meeting with Wilson, no limitation period had sufficiently accrued to preclude the suit. In the alternative, Thompson argued that the proper method for seeking judicial review under RCW 68.50.015 was through a writ and that the chapter 4.16 RCW general statutes of limitations did not apply to special proceedings such as writs. Finally, Thompson argued that a declaratory judgment action was not subject to any statute of limitations.

¶8 On May 4, 2007, the trial court granted Wilson's motion, dismissing all of Thompson's claims based on the statute of limitations.

¶9 Thompson appeals.

## ANALYSIS

¶10 We review a summary judgment order de novo and engage in the same inquiry as the trial court. *Beal Bank, SSB v. Sarich*, 161 Wn.2d 544, 547, 167 P.3d 555 (2007). Summary judgment is proper if, viewing the facts and reasonable inferences most favorably to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c); *Clarke v. Office of Attorney Gen.*, 133 Wn. App. 767, 784-85, 138 P.3d 144 (2006), *review denied*, 160 Wn.2d 1006 (2007).

## I. Incontrovertible Facts

▮ ¶11 The trial court decided this case solely on the basis of the pleadings, declarations, and affidavits before it. Because both Thompson's pleadings and her declaration were submitted on her behalf as the nonmoving party, the incontrovertible portions must be taken as true for purposes of summary judgment. *See Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). Thus, the incontrovertible facts before the trial court were (1) since her daughter's death on December 16, 1998, Thompson repeatedly attempted to exercise her rights under RCW 68.50.105, which requires the coroner "to meet with the family of the decedent to discuss the findings of the autopsy or postmortem"; (2) when Wilson finally agreed to meet with Thompson on March 24, 2006, they did not discuss the autopsy and postmortem findings. Instead, Wilson accepted Thompson's case file, agreed to review it, and agreed to later meet with Thompson to discuss the file and his findings; (3) Wilson refused to meet again with Thompson as promised, and he at no time discussed the file, his findings, or the autopsy and postmortem as required by RCW 68.50.105.

## II. Judicial Review under RCW 68.50.015

¶12 Thompson appeals the summary judgment dismissal of her petition for judicial review under RCW 68.50.015. In his motion for summary judgment, Wilson asserted that the statute of limitations precluded Thompson's suit. In response, Thompson asserted that no statute of limitations applied or, if one did, it did not begin to accrue until after her March 24, 2006 meeting with Wilson. Both parties acknowledge that no case has specifically addressed the statute of limitations applicable to judicial review contemplated by RCW 68.50.015. Thus, this is a case of first impression.

▮ ¶13 Construction of a statute is a question of law we review de novo. *City of Pasco v. Pub. Employment*

*Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). We look to the statute's plain language in order to fulfill our obligation and give effect to legislative intent. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). When faced with an unambiguous statute, we derive the legislature's intent from the plain language alone. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994). "When a statute is ambiguous, 'this court will resort to principles of statutory construction, legislative history, and relevant case law to assist in interpreting it.' " *Yousoufian v. Office of King County Executive*, 152 Wn.2d 421, 434, 98 P.3d 463 (2004) (quoting *State v. Watson*, 146 Wn.2d 947, 955, 51 P.3d 66 (2002)).

¶14 Under RCW 4.16.080(5), a three-year statute of limitations applies to "[a]n action against a . . . coroner . . . upon a liability incurred by the doing of an act in his official capacity and by virtue of his office, or by the omission of an official duty." RCW 4.16.130 states that "[a]n action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued."

¶15 Thompson contends that (1) RCW 4.16.080(5) is not applicable because this is not an action in liability and (2) no general statute of limitations applies to this "special proceeding." Br. of Appellant at 27. Wilson argues that either a two- or three-year statute of limitations applies to judicial review permitted by RCW 68.50.015.

¶16 Because RCW 68.50.015 does not contemplate an action resulting in liability, RCW 4.16.080(5), by its plain language, does not apply. Thus, the three-year limitation period cited in RCW 4.16.080(5) is likewise inapplicable. But the Washington Supreme Court has said that RCW 4.16.130 "serves as a limitation for any cases not fitting into the other limitation provisions. This [catchall provision] serves the State's purpose to compel prompt litigation and not leave persons fearful of litigation unlimited by time." *Stenberg v. Pac. Power & Light Co.*, 104 Wn.2d 710, 721,

709 P.2d 793 (1985). The judicial review that Thompson seeks is a creature of statute to which no other limitation provision applies; thus, we hold that the catchall provision applies a two-year limitation period to judicial review of a coroner's determinations authorized under RCW 68.50.015.

 ██ ¶17 Here, Wilson issued the contested death certificate on May 30, 2002. Therefore, under RCW 4.16.130, the two-year limitation period ended on May 30, 2004. And Thompson's suit was not filed until August 18, 2006. Thus, by the time Thompson had filed her suit, the statute of limitations could have expired had Wilson complied with the requirement that he meet with family and discuss his findings.

¶18 But here, despite a lack of evidence about specific dates of requests by Thompson to meet with Wilson, Thompson's incontroverted declaration, which must be taken as true under the summary judgment standard, states that "[s]ince my daughter's death, I had repeatedly tried to meet with [Wilson] to discuss his findings regarding my daughter's death." CP at 38. The only meeting that occurred was in March 2006, during which Thompson gave Wilson the report from her independent investigator. Wilson then promised to read the report and to meet again to discuss his findings. Wilson thereafter refused to meet with Thompson.

¶19 RCW 68.50.105's legislative history does not discuss its relationship to RCW 68.50.015, but it does make clear that the legislature intended the coroner's meeting with family to be mandatory upon the family's request. *See* S.B. 2083, 45th Leg., Reg. Sess. (Wash. 1977) (striking "may meet with the family of decedent upon request" and inserting "shall, upon request, meet with the family of the decedent"). The statute clearly requires the coroner to explain the autopsy or postmortem findings, which may, in turn, eliminate a request for judicial review of "the accuracy of the determinations," as provided in RCW 68.50.015.

¶20 Because this mandatory meeting is available (1) only to the family and (2) only upon request, it is not possible for every interested person to avail themselves of

this option. Therefore, it does not follow, as Thompson contends, that all parties are required to exhaust this option before requesting judicial review under RCW 68-.50.015. But the facts and circumstances in this case support Thompson's argument that the limitation period is equitably tolled pending Wilson's compliance with RCW 68.50.105.

¶21 Washington "allows equitable tolling when justice requires." *Millay v. Cam*, 135 Wn.2d 193, 206, 955 P.2d 791 (1998). Equitable tolling is permitted where there is evidence of bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff. "In Washington equitable tolling is appropriate when consistent with both the purpose of the statute providing the cause of action and the purpose of the statute of limitations." *Millay*, 135 Wn.2d at 206.

¶22 Here, under the summary judgment standard, we take as true Thompson's declaration that she repeatedly tried to meet with Wilson and, when he finally agreed to meet with her, he misled her and only then did she seek judicial review. Thompson asserts that it was Wilson's actions that caused the limitation period to lapse. Wilson does not dispute these assertions of deception and misleading assurances.

¶23 Clearly, one purpose of the judicial review provided for in RCW 68.50.015 is to allow family members who are not satisfied with the coroner's explanation of the autopsy or postmortem findings to seek judicial review of the accuracy of those determinations. Because it is undisputed that Thompson has actively and continuously sought an explanation of Wilson's findings "[s]ince my daughter's death," tolling the period of limitations here pending Wilson's compliance with the mandate of RCW 68.50.105 does not offend the purpose of the statute of limitations. CP at 38.

¶24 We hold that when viewing the facts and reasonable inferences here most favorably to Thompson, the non-moving party, the prescribed two-year statute of limitations

is equitably tolled and is to commence only upon Wilson's good faith compliance with RCW 68.50.105. We reverse that portion of the trial court's order granting Wilson's motion for summary judgment dismissal of Thompson's petition for judicial review based on the statute of limitations.

### III. WRIT OF MANDAMUS UNDER RCW 7.16.160

¶25 Thompson also asked the trial court to issue a writ of mandamus compelling Wilson "to make accurate determinations and certifications, and for the issuance of such orders and relief as may be appropriate." CP at 64.

¶26 Under RCW 7.16.160, a court may issue a writ of mandamus "to compel the performance of an act which the law especially enjoins as a duty resulting from an office." "Whether a statute specifies such a duty is a question of law that we review de novo." *Delaney v. Spokane County Bd. of Comm'rs*, 161 Wn.2d 249, 253, 164 P.3d 1290 (2007). The writ "must be issued in cases where there is not a plain, speedy and adequate remedy in the ordinary course of law" and "upon affidavit on an application of the party beneficially interested." RCW 7.16.170. Before a writ will issue, Thompson must satisfy these requirements. *Eugster v. City of Spokane*, 118 Wn. App. 383, 402, 76 P.3d 741 (2003).

¶27 In opposition to Wilson's summary judgment motion, Thompson declared:

> I have never had such a meeting as contemplated by RCW 68.50.105. [Wilson] also breached a promise he made to me when he accepted the evidence I worked to deliver to him. There does not appear to be any procedure in the Coroner's Office to appeal his refusal to meet with me. There does not appear to be any procedure in the Coroner's Office to appeal his determinations. I do not believe that the accuracy of his determinations have ever been reviewed by a court, as contemplated by [chapter 68.50 RCW].

CP at 13. And Thompson stated that she "asks no more than to also have the actions of [Wilson as Coroner] reviewed by

the Court to determine if his actions were arbitrary and capricious."[3] CP at 34.

¶28 Here, Wilson's duty to meet with Thompson arose upon her request under the plain language of RCW 68.50.105. Wilson does not dispute Thompson's claim that he failed to fully comply with the statute requiring him to "discuss the findings of the autopsy or post mortem" with her. RCW 68.50.105. Wilson does not suggest, nor are we aware of, any existing adequate remedy in law to compel such a meeting.

¶29 Accordingly, we hold that, as a matter of law, Wilson's duty to meet with Thompson as required under RCW 68.50.105 arose upon her request for that meeting. Thus, when viewing the facts and reasonable inferences most favorably to the nonmoving party, the trial court erred in dismissing Thompson's application for a writ of mandamus to the extent she seeks to compel Wilson to meet to discuss the autopsy and postmortem findings under RCW 68.50.105. We reverse that portion of the trial court's order granting Wilson's motion to dismiss Thompson's application for a writ of mandamus to compel the meeting.

IV. WRIT OF CERTIORARI UNDER RCW 7.16.040

¶30 Thompson also sought a writ of certiorari, designated as the writ of review by RCW 7.16.030, compelling Wilson "to review his actions and determinations." CP at 64.

¶31 Under RCW 7.16.040, a court will issue a statutory writ of review if the petitioner can show that (1) "an inferior tribunal, board or officer," (2) "exercising judicial functions," (3) "exceeded [its] jurisdiction . . . or act[ed] illegally," and (4) "there is no appeal, nor . . . any plain,

---

[3] Thompson also seemed to suggest that Wilson's failure to hold an inquest was "arbitrary and capricious." CP at 62. But RCW 36.24.020 specifically leaves the decision to hold an inquest to the discretion of the coroner. And writs may not be issued to compel the performance of discretionary acts. *See Walker v. Munro*, 124 Wn.2d 402, 410, 879 P.2d 920 (1994). Furthermore, RCW 68.50.015 provides expressly for review of a coroner's determinations, providing an adequate remedy at law for that portion of her requested relief under the mandamus petition.

speedy and adequate remedy at law." *See Raynes v. City of Leavenworth*, 118 Wn.2d 237, 244, 821 P.2d 1204 (1992). "If any of these factors are absent, there is no basis for superior court review." *Jones v. Pers. Res. Bd.*, 134 Wn. App. 560, 567, 140 P.3d 636 (2006).

■■■ ¶32 The Washington Supreme Court has articulated a four-part test to determine whether a given action is a "judicial function[ ]" for purposes of RCW 7.16.040:

"(1) whether the court could have been charged with the duty at issue in the first instance; (2) whether the courts have historically performed such duties; (3) whether the action of the municipal corporation involves application of existing law to past or present facts for the purpose of declaring or enforcing liability rather than a response to changing conditions through the enactment of a new general law of prospective application; and (4) whether the action more clearly resembles the ordinary business of courts, as opposed to those of legislators or administrators."

*Raynes*, 118 Wn.2d at 244-45 (quoting *Standow v. City of Spokane*, 88 Wn.2d 624, 631, 564 P.2d 1145 (1977), *overruled on other grounds by State v. Smith*, 93 Wn.2d 329, 336, 610 P.2d 869 (1980)).

■■■ ¶33 Here, Thompson offered no evidence showing that the coroner's actions and determination constitute a judicial function. And Thompson does not assert that Wilson exceeded his jurisdiction or acted illegally. *See Wash. Pub. Employees Ass'n v. Wash. Pers. Res. Bd.*, 91 Wn. App. 640, 653, 959 P.2d 143 (1998) ("[T]he intent of [RCW 7.16.040] is best furthered by interpreting 'illegality' to include errors of law and allow review where an inferior tribunal exercising quasi-judicial functions allegedly has made a legally erroneous ruling and there is no other adequate remedy."). Moreover, in view of our holding above permitting judicial review under RCW 68.50.015, an adequate remedy at law is available.

¶34 Therefore, we affirm the trial court's summary judgment dismissal of Thompson's application for a writ of certiorari under RCW 7.16.040.

## V. DECLARATORY JUDGMENT ACTION UNDER RCW 7.24.050

¶35 Thompson's petition also sought a declaratory judgment under RCW 7.24.050 that her daughter's "death was not suicide." CP at 64.

¶36 RCW 7.24.010 states that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." RCW 7.24.050 applies these powers to "any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty."

■ ¶37 Declaratory judgment relief is improper if it does not relate to a justiciable controversy. *Walker*, 124 Wn.2d at 411. For declaratory judgment purposes, a justiciable controversy is

"(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*Nollette v. Christianson*, 115 Wn.2d 594, 599, 800 P.2d 359 (1990) (alteration in original) (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)).

■ ■ ¶38 Thompson asked the trial court to declare that her daughter's "death was not a suicide." CP at 64. Here, Wilson has no genuine or opposing interest to Thompson. Nor is a judicial declaration of the manner of death contemplated under chapter 36.24 RCW. Instead, at his or her discretion, the coroner may call an inquest and seat a jury and, in that case, it is the jury that decides the matter. RCW 36.24.020 ("[T]he superior court . . . provide[s] persons to serve as a jury of inquest to hear all the evidence concerning the death and to inquire into and render a true

verdict on the cause of death."). Therefore, whether Thompson's daughter's death was a suicide is not justiciable within the meaning of chapter 7.24 RCW.

¶39 Moreover, the Washington Supreme Court has historically "limited the operation of the uniform declaratory judgment act to cases where there is no satisfactory remedy at law available." *Hawk v. Mayer*, 36 Wn.2d 858, 866, 220 P.2d 885 (1950); *see also Kahin v. Lewis*, 42 Wn.2d 897, 902, 259 P.2d 420 (1953) ("the rule is that declaratory judgment actions are limited to situations where there is no adequate remedy at law"). As discussed above, RCW 68.50.015 provides an adequate remedy for challenging the accuracy of the coroner's determination of the manner of death. Because the subject of Thompson's action is not justiciable within the meaning of chapter 7.24 RCW and because an adequate remedy at law is available to her, we affirm the trial court's summary judgment dismissal of Thompson's declaratory judgment action.

¶40 We reverse that portion of the trial court's order granting Wilson's motion dismissing Thompson's petition for judicial review based on the statute of limitations and her application for a writ of mandamus to compel a meeting to discuss the autopsy and postmortem findings. We affirm that portion of the trial court's order granting Wilson's motion for dismissal of Thompson's writ of certiorari and declaratory judgment actions. We remand for proceedings consistent with this opinion.

ARMSTRONG and QUINN-BRINTNALL, JJ., concur.